IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALONZO E. BROADHEAD, #206627,   )
   )
       Plaintiff,   )
   )
     v.   )    CASE NO. 2:10-CV-808-MHT
   )        [WO]
   )
STEVEN CANTY, *et al.*,   )
   )
       Defendants.   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Alonzo E. Broadhead ["Broadhead"], a state inmate currently incarcerated at the St. Clair Correctional Facility, challenges the constitutionality of actions taken against him during his prior incarceration at the Easterling Correctional Facility ["Easterling"].  Specifically, Broadhead complains that correctional officer Steven Canty used profane, threatening and abusive language in addressing him, initiated disciplinaries against him in retaliation for his complaining to the warden about Canty's alleged use of force against another inmate and conducted an unconstitutional search of his cell.  *Complaint - Doc. No. 1* at 2-3; *Affidavit in Support of Complaint - Doc. No. 1-1* at 1.  Broadhead seeks declaratory relief and monetary damages.  *Complaint - Doc. No. 1* at 4; *Amendment to Complaint - Doc. No. 9* at 1.  Broadhead names Officer Canty, Lt. Woods, Capt. Barbers, Deputy Warden Kenneth Sconyers and Warden Louis Boyd as defendants in

this cause of action.

The defendants filed a special report and supporting evidentiary materials, including affidavits and relevant prison records, addressing Broadhead's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned report as a motion for summary judgment.  *Order of December 7, 2010 - Doc. No. 15*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

---

judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted). Consequently, to survive the defendants' properly supported motion for

summary judgment, Broadhead is required to produce "sufficient [favorable] evidence,"

which would be admissible at trial, supporting his claims of constitutional violations.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the

evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly

probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of

a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty

Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911

F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are

likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice

to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th

Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting

evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912,

916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome

5

of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this

case, Broadhead fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Respondeat Superior/Vicarious Liability

The complaint contains no claims against Lt. Woods, Capt. Barbers, Deputy Warden Sconyers or Warden Boyd.  Moreover, in his affidavit in response to the defendants' report, Broadhead asserts that his "complaint in this matter is against Officer Steven Canty for threats, abusive language, harassment, and action in a unprofessional behavior" arising from Canty's use of profane language on September 1, 2010.  It is therefore clear that Broadhead seeks relief from defendants Woods, Barbers, Sconyers and Boyd on the basis of their supervisory positions at Easterling.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability] . . . .  *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948

7

(2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.

Broadhead does not allege that defendants Woods, Barbers, Sconyers or Boyd personally participated in the actions about which he complains.  In addition, Broadhead fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by the aforementioned defendants and the alleged constitutional deprivations. A supervisory official "may be liable only for implementing a policy that is 'itself a repudiation of constitutional rights' and 'the moving force of the constitutional violation.' *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)." *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006).  Consequently, the claims lodged against defendants Woods,

Barbers, Sonyers and Boyd lack an arguable basis in law and summary judgment is therefore due to be granted in their favor.

### B.  Use of Profane, Threatening, Harassing and/or Abusive Language

Broadhead complains that defendant Canty used profane, threatening, harassing and/or abusive language towards him in violation of his constitutional rights and an applicable administrative regulation.  *Affidavit in Support of Complaint - Doc. No. 1-1* at 1. Specifically, Broadhead maintains that on September 1, 2010, after an incident between Canty and another inmate, Canty told him "if [he] didn't have anything to do with [the incident] . . . to step the f--- out of the office right now!"  *Plaintiff's Affidavit in Response - Doc. No. 18* at 1.

1.  <u>The Eighth Amendment Claim</u>.  To state a viable claim for relief in a 42 U.S.C. § 1983 action, the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).  Inappropriate, derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation.  *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by correctional officers do not violate inmate's constitutional rights); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) ("[A]llegations of verbal abuse, no

matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *see also Sims v. Hickok*, 185 F.3d 875 (10th Cir. 1999) (district court's summary dismissal of inmate complaint for failure to state a claim appropriate because officer's insults, taunts and/or racial slurs did not amount to a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse, even if racially or ethnically motivated, does not give rise to a cause of action under § 1983); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (verbal abuse alone is not violative of the Eighth Amendment); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere verbal taunt demonstrates a constitutional wrong); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (mere name-calling did not violate inmate's constitutional rights); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal abuse, even a threat of harm, not actionable under § 1983).

2.  Violation of Administrative Regulation.  Broadhead complains that Canty's use of profane language violated Administrate Regulation No. 207.  This claim, however, entitles Broadhead to no relief as an alleged violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of

prisons); *United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (finding mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[F]ailure to follow prison rules or regulations do not, without more, give rise to a constitutional violation."); *Caruth v. Pinkney*, 683 F.2d 1044, 1052 (7th Cir. 1982) (The failure of correctional officials to comply with directives of a prison regulation "does not amount to a violation of constitutional magnitude."); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1991) (holding that if state law grants more protections than Constitution requires state's failure to abide by its law is not a federal constitutional issue); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527-28 (11th Cir. 1987) (violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, it is clear that the use of profane language by Canty entitles Broadhead to no relief.  Thus, Canty is entitled to summary judgment on this claim.

### C.  The First Amendment Claim - Retaliation

Broadhead alleges that Canty initiated and processed disciplinary actions against him for possession of contraband and insubordination in retaliation for his complaining to the warden that Canty had assaulted another inmate.  *Affidavit in Support of Complaint - Doc. No. 1-1* at 1.  Canty, however, maintains that Broadhead received the disciplinary actions

solely because Broadhead violated prison rules, i.e., Broadhead possessed various items of property considered contraband while housed in disciplinary segregation and addressed Canty in a disrespectful manner. *Defendants' Exhibit A - Doc. No. 14-1* at 3-4 and 11-14. The affidavits and evidentiary materials submitted by the defendants, including documents contained in Broadhead's institutional file which were contemporaneously compiled during his incarceration, support this assertion.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources . . . ." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"

*Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804. In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804. Thus, while inmates retain a constitutional right protected by the First Amendment to submit complaints to supervisory officials, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)] . . . . The gist of a retaliation claim is that a prisoner is penalized for exercising

13

a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-42 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted) . . . . [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and . . . disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-10 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment,

14

an "inmate must establish . . . three elements:  (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Broadhead alleges that Canty, in issuing the disciplinaries, retaliated against him for submitting complaints to the warden regarding Canty's alleged abusive treatment of another inmate, thus satisfying the first element of his retaliation claim.  *Smith*, 532 F.3d at 1277. The second element requires Broadhead to demonstrate that the disciplinaries "would likely deter a [prisoner] of ordinary firmness" from filing complaints challenging the behavior of correctional officers.  *Id*.  This "presents an objective standard and a factual inquiry."  *Id*. The court assumes *arguendo* that this standard has been met.  Nevertheless, Broadhead fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse action of Canty.

The causal connection inquiry focuses on the "subjective motivation of the

15

defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendant[] [was] subjectively motivated to discipline" Broadhead for complaining to the warden. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

16

122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4 . . . ." *Smith*, 532 F.3d at 1278 n.22.

Canty denies the allegation of retaliation and argues that the adverse actions about which Broadhead complains occurred in an effort to maintain security and due to the manner in which Broadhead expressed himself, using profane and defiant language towards a correctional officer, not because he complained to correctional personnel. Broadhead offers

17

only his conclusory allegation of ultimate fact that Canty retaliated against him for complaining to the warden.  This allegation is insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor.  Additionally, the circumstances, when taken as a whole, do not support making such an inference.  Thus, Broadhead's retaliation claim falters on this element.  Moreover, even assuming a reasonable fact finder could infer the motivating factor element, it is clear under *Mt. Healthy* that correctional officials would have disciplined Broadhead regardless of any  complaint made to the warden because Broadhead's possession of contraband and his insubordinate behavior constituted violations of institutional rules.  *Turner*, 482 U.S. 91-92, 102 S.Ct. at 2262-63.  "Objective prison administrators standing in [the defendant's] shoes would assume that [allowing a violation of institutional rules] . . . would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives."  *Smith*, 532 F.3d at 1279.  In light of the foregoing, Canty is entitled to summary judgment on the First Amendment claim as Broadhead fails to establish by appropriate evidence a causal relationship between the alleged protected activity and the adverse action taken against him.  *Id*. at 1278-79.

### D.  The Fourth Amendment Claim - Unconstitutional Search

Broadhead asserts that Canty conducted a search of his cell in violation of his rights

18

secured by the Fourth Amendment.  *Complaint - Doc. No. 1* at 3.   Broadhead's claim challenging "the search of his prison cell . . . fail[s] because [an inmate] does not have a reasonable expectation of privacy in his cell.  *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). As a result, a search of his cell did not violate his Fourth Amendment rights, and he has no § 1983 cause of action arising from the search.  *See id*. at 3202."  *Johnson v. Hulett, et al.,* 491 F. App'x 60, 62 (11th Cir. 2012); *Padgett v. Donald,* 401 F.3d 1273, 1278 (11th Cir. 2005) ("Prisoners have no Fourth Amendment rights against searches of their prison cells . . . .").  Canty is therefore entitled to summary judgment on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED  that  the  parties  are  DIRECTED  to  file  any  objections  to  the Recommendation **on or before September 10, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The

parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 27th day of August, 2013.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE